```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION
```

KATHY SMITH,                   )
                               )
         Plaintiff,            )
                               )
    v.                         )     No. 4:10 CV 1319 DDN
                               )
MICHAEL J. ASTRUE, Commissioner)
of Social Security,            )
                               )
         Defendant.            )

**MEMORANDUM**

This action is before the court for judicial review of the final decision of defendant Commissioner of Social Security denying the application of plaintiff Kathy Smith for supplemental security income (SSI) under Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 1381 et seq. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 8.) For the reasons set forth below, the court affirms the decision of the Administrative Law Judge (ALJ).

**I. BACKGROUND**

On December 6, 2006, plaintiff filed her application for SSI benefits, alleging an onset date of disability of May 1, 2001. (Tr. 116-19.) She alleged disability due to asthma; problems with her right toe, lower back, and neck; depression; and acromioclavicular (AC) separation of the right shoulder.[1] (Tr. 148.) Her claim was denied, and she requested a hearing before an ALJ.[2] (Tr. 70-73.)

---

[1]The partial or complete separation of two parts of the shoulder, the collar bone (clavicle) and the end of the shoulder blade (acromium). WebMD, http://www.webmd.com/a-z guides/ shoulder-separation-topic-overview (last visited June 10, 2011).

[2]Missouri is one of several test states participating in modifications to the disability determination procedures which apply in this case. 20 C.F.R. §§ 404.906, 404.966 (2007). These modifications include, among other things, the elimination of the reconsideration step. See id.

On March 27, 2009, following a hearing, the ALJ found plaintiff was not disabled. (Tr. 4-14.) On June 18, 2010, the Appeals Council denied her request for review. (Tr. 1-3.) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. MEDICAL AND EMPLOYMENT HISTORY

Plaintiff was treated at Grace Hill Neighborhood Health Center (Grace Hill) from April 13, 2007 to August 11, 2008. (Tr. 224-41.) On April 13, 2007, she reported a history of Type 2 diabetes and hypertension, as well as chronic neck, shoulder, and lower back pain. (Tr. 230.) Plaintiff was diagnosed with non-insulin-dependent Type 2 diabetes, hypertension, and chronic pain of the lumbar spine. She had not been compliant with managing her diabetes, and compliance issues were discussed. Her strength was rated 4/5 in the lower extremities and 3/5 on the upper right extremity. (Tr. 232.) She reported no pain at the time. She had not taken any of her own prescribed medication for more than six months, although she had been periodically using her siblings' medications. (Tr. 226, 230.)

On June 13, 2007, plaintiff reported neck and low back pain, as well as pain and tingling in her legs. (Tr. 224, 229.) She stated she had not taken any medications during the previous month because she did not have transportation to pick them up. She reported using a cane for "many years." (Tr. 292, 232.) She was diagnosed with Type 2 diabetes, hypertension, and chronic back pain. Her diabetes and hypertension medicines were restarted and compliance issues were again discussed. (Tr. 236.)

On a follow up visit to Grace Hill on December 31, 2007, the physician noted plaintiff was noncompliant with her medications and monitoring her blood sugar. (Tr. 228, 237.) Plaintiff reported pain in her back, knees, and ankle, but no neck pain. (Tr. 228.) On March 28, 2008, noncompliance was again noted. (Tr. 238-39.) On May 1, 2008, plaintiff had lost five pounds through diet and exercise and was compliant with medication. She reported feeling "much better," although she still had pain in her left foot. (Tr. 240.) On August 11, 2008, plaintiff was seen for refills, paperwork, and release of medical records. (Tr. 241.)

On January 11, 2007, plaintiff was examined by consultative physician Elbert Henry Cason, M.D. (Tr. 201-07.) Plaintiff reported lower back pain, a right shoulder AC separation, a neck fracture with occasional pain, and numbness in her left toe from a 1998 car accident. (Tr. 201.) She was 5 feet 2½ inches tall and weighed 205 pounds. Her blood pressure was 193/108 and her heart rate was 63, described as "good." (Tr. 202.)

Plaintiff reported that she had asthma, experiencing about three asthma attacks per year. She used a handheld inhaler, but no nebulizer or oxygen. (Tr. 201-02.) Plaintiff reported she did not undergo any surgery following a 1998 car accident. (Tr. 201-02.) An x-ray of her lumbar spine revealed moderate degenerative and hypertrophic[3] changes, no evidence of fracture, and preserved intervertebral disc space. (Tr. 205.) Her lumbar spine flexion was 45 degrees, and straight leg raises were 90 degrees for both legs. (Tr. 203.) Plaintiff stated she smoked three cigarettes per day and was not taking any prescription medication. (Tr. 202.) She drove and left her house twice a week, did household chores, and was able to make a fist, write, hold a coffee cup, and button her clothes. (Tr. 201-02, 206.)

Dr. Cason noted decreased range of motion (ROM) in plaintiff's lumbar spine with lumbar area tenderness, no muscle spasms, decreased right shoulder motion, normal cervical spine motion, ability to heel and toe stand and squat by holding onto the edge of a desk, and asthma. (Tr. 203-04.) Plaintiff's strength in her bilateral lower extremities, grip, and left side was 4/5. (Tr. 203.) She had full strength in her left upper extremities. (Tr. 203.) Plaintiff used a walker that she stated was doctor-prescribed. (Tr. 201.) Dr. Cason noted that she walked with a slight limp on her right leg both with and without her walker. (Tr. 203.) She stated she was taking glipizide, a prescription oral antidiabetic, along with some pain pills, both of which were not doctor-prescribed, but which she received from others.

---

[3]General increase of bulk of a part or organ, not due to tumor formation. <u>Stedman's Medical Dictionary</u> 929 (28th ed. 2006).

-3-

On January 11, 2007, plaintiff saw licensed psychologist Thomas Davant Johns, Ph.D., for a consultative psychological evaluation. (Tr. 218-23.) She stated she was not currently receiving psychiatric treatment and never had. (Tr. 218.) Her mood was normal with good affect. She was completely oriented, and not delusional or hallucinating. (Tr. 221.) Despite reporting problems with her back and shoulder, and some difficulty getting in and out of the bathtub, plaintiff was able to function normally in activities of daily living, including cooking, cleaning, grocery shopping, and laundry. (Tr. 222.) Her motor activity was normal while sitting, but extremely slow and labored when walking with a three-wheeled walker. (Tr. 220-21.) Dr. Johns noted plaintiff was markedly vague and evasive in reporting her medical history and he found it difficult to get specific details. He noted she frequently offered irrelevant information to questions, provide indirect answers to questions, and seemed to be a "marginal historian." (Tr. 218-19, 221.) He diagnosed plaintiff with depressive disorder, not otherwise specified, mild to moderate without treatment, and assigned her a GAF score of 70.[4] (Tr. 222.) Dr. Johns opined plaintiff was capable of completing simple tasks in a timely manner over a sustained period of time. (Id.)

On January 23, 2007, a Physical Residual Functional Capacity (RFC) Assessment form was completed by Dr. A. Tayob. (Tr. 208-12.) Dr. Tayob opined that plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and that pushing/pulling was limited

---

[4]A GAF score, short for Global Assessment of Functioning, helps summarize a patient's overall ability to function. A GAF score has two components. The first component covers symptom severity and the second component covers functioning. A patient's GAF score represents the worst of the two components.

On the GAF scale, a score from 61 to 70 represents mild symptoms (such as depressed mood and mild insomnia), or some difficulty in social, occupational, or school functioning (such as occasional truancy, or theft within the household), but the individual generally functions pretty well and has some meaningful interpersonal relationships. Diagnostic and Statistical Manual of Mental Disorders 32-34 (4th Ed. 2000).

in the upper extremities. (Tr. 209.) She could occasionally climb ramps/stairs, but never ladders/ropes/scaffolds, and could occasionally balance, stoop, kneel, crouch, and crawl. (Tr. 210.) Reaching was limited in all directions due to limited abduction of the right shoulder. (Tr. 210.) She was to avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation and hazards, including machinery and heights. (Tr. 211.) Plaintiff indicated she had a doctor-prescribed cane and walker. Dr. Tayob opined that plaintiff's claim that she needed an assistive walking device was not credible because there was no medical evidence to support such a need. (Tr. 212.)

**Testimony at the Hearing**

On October 17, 2008, plaintiff, who was 52 years old at the time, testified to the following. (Tr. 20-35.) She was in a car accident in 1998, resulting in injuries to her head, back, shoulder, and neck. (Tr. 22, 25, 28, 35.) Problems with her right side, back, and left toe prevented her from working. She could not grip because her hand did not fully close. (Tr. 25-26, 37, 42.) She used a walker because she needed to lean on something in order to walk. (Tr. 32, 41.) She could use only one arm due to AC separation, although no surgery had ever been recommended. (Tr. 26-28, 45.) She took pain medications that caused drowsiness. (Tr. 30-31, 33.) She was not in pain at the hearing, except for a "little ache." (Tr. 46.) She lost her balance when she exercised. Her left toe was numb. (Tr. 33-34.) She had problems with memory. (Tr. 25, 35-36.)

She was divorced and lived with her ex-husband and two daughters. (Tr. 21.) She completed high school and had some vocational training. (Tr. 21-22, 50.) She previously worked as a certified nurse's assistant (CNA), assembly worker, catering helper, and medical assistant. (Tr. 22-24.) She drove and had no difficulty using the foot pedals. (Tr. 42.) She was able to visit friends or relatives once or twice a month. (Tr. 42.) She read occasionally without problems. (Tr. 43.) She picked up around the house, washed dishes, and helped prepare dinner. (Tr. 41, 43.) She had depression, experiencing crying episodes about every other day, but had never seen a psychiatrist or psychologist. (Tr. 37-39, 48-49.)

-5-

At the hearing, along with the exhibits considered on plaintiff's two prior applications for benefits, she tendered an exhibit list from a prior application, which included an exhibit described as an April 15, 2002 prescription for a wheelchair and walker. The purpose of this exhibit was to show that in the past a doctor had prescribed a "wheelchair/walker" for plaintiff. (Tr. 18-19, 243.) While the prescription itself was not offered or admitted into evidence, the ALJ generally admitted all the tendered exhibits, including the prescription. ("I'll consider them for what they're worth.").

Vocational expert (VE) Jeffrey Magrowski also testified at the hearing. The VE testified that a hypothetical individual of plaintiff's age, education, and work experience, and with the RFC assessed by Dr. Tayob, would be able to perform the requirements of light, unskilled work existing in significant numbers in the national economy, such as hostess at a small restaurant and children's attendant. (Tr. 13, 52-54.) The VE testified that if plaintiff required a wheeled walker, she would not be capable of performing any of these jobs. (Tr. 57.)

### III.  DECISION OF THE ALJ

On March 27, 2009, the ALJ denied plaintiff's claim. At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 17, 2006, her application date. At Step Two, the ALJ found that plaintiff had severe impairments of degenerative joint disease of the lumbar spine, asthma, and right AC separation. The ALJ found that she had a non-severe impairment of depression. (Tr. 6.) At Step Three, the ALJ found plaintiff did not have an impairment or combination of impairments listed in or medically equal to one contained in the 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing of Impairments. (Tr. 6-7.)

The ALJ concluded plaintiff had the residual functional capacity (RFC) to perform "light" work as defined in 20 C.F.R. § 416.967(b), except that plaintiff could never climb ladders, ropes, scaffolds; could only occasionally climb ramps and stairs; should never engage in work where balance was critical to performance of her duties; could only occasionally stoop, kneel, crouch, and crawl; was limited from reaching in all

directions due to the limited abduction in her right shoulder; would be able to use her right arm straight out in front of her; and could not reach above shoulder level. The ALJ states she should avoid moderate exposure to fumes, odors, dusts, gases, and poor ventilation; working in a hazardous work setting around open moving machinery and unprotected heights; and avoid concentrated exposure to extremely cold temperatures; and high levels of humidity and violent vibration of the body. (Tr. 7.)

At Step Four, the ALJ found that plaintiff was unable to perform her past relevant work. (Tr. 12.) The ALJ further found that plaintiff's subjective allegations of disabling symptoms and limitations, including her claimed need for an assistive walking device, were not fully supported by the record evidence. (Tr. 7-12.) The ALJ found, based on the testimony of the VE, that plaintiff's RFC, age, education, and work experience enabled her to perform work existing in significant numbers in the national economy. (Tr. 12-13.) Consequently, the ALJ found plaintiff was not disabled as defined under the Act. (Tr. 13.)

## IV. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's final decision complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve

-7-

continuous months. 42 U.S.C. § 1382c(a)(3)(A); Pate-Fires, 564 F.3d 935, 942. A five-step regulatory framework is used to determine whether an individual qualifies for disability. 20 C.F.R. § 416.920(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Pate-Fires, 564 F.3d at 942.

Steps One through Three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment. Pate-Fires, 564 F.3d 935, 942. If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Id. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform her past relevant work (PRW). (Id.) The claimant bears the burden of demonstrating she is no longer able to return to her PRW. Id. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work. Id.

## V. DISCUSSION

Plaintiff argues the ALJ erred in assessing her RFC because he failed to address her need for a wheelchair and walker. Thus, she argues the ALJ's RFC findings are not in accord with Lauer v. Apfel, 245 F.3d 700 (8th Cir. 2001), and Singh v. Apfel, 222 F.3d 448 (8th Cir. 2000). In support, she notes that her use of a walker was documented during her consultative evaluation, but that it does not appear the nonexamining physician considered this earlier evidence in formulating his opinion. She argues that this is significant because the VE, in response to a question from plaintiff's counsel, testified that if a wheelchair and walker were necessary, then she would not be able to engage in sustained substantial gainful activity. Plaintiff argues that in the absence of any discussion relative to this record evidence, the RFC findings are not supported by substantial evidence.

The RFC is a function-by-function assessment of an individual's ability to do work-related activities based on all the evidence. Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007). The ALJ has the

responsibility of determining a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians, examining physicians, and others, as well as the claimant's own descriptions of her limitations. Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). Before determining a claimant's RFC, the ALJ must evaluate the claimant's credibility. Id. The ALJ's decision met these requirements. Lauer requires the RFC determination to be based in medical evidence. 245 F.3d at 704. Here, there is substantial evidence in the record supporting the ALJ's decision.

The ALJ's decision addressed plaintiff's asserted need for a wheelchair or walker, noting that her alleged need for an assistive device was not supported by medical evidence of record. (Tr. 11.) The medical record evidence, including an x-ray of plaintiff's lumbar spine, and reports of consultative examining physician Dr. Cason and medical consultant Dr. Tayob, indicates that plaintiff's physical impairments did not warrant use of an assistive device for walking. (Tr. 11, 201-12.) A January 11, 2007 x-ray indicated moderate degenerative and hypertrophic changes to plaintiff's lumbar spine. (Tr. 205.) However, her spinal alignment was satisfactory, there was no evidence of fracture, and her intervertebral disc spaces were preserved. (Tr. 205.) Dr. Cason rated plaintiff's lower extremity strength at a 4/5. (Tr. 203.) Her lumbar spine flexion was 45 degrees, and straight leg raises were 90 degrees for both legs. (Tr. 203.) Plaintiff's gait was the same with and without her walker. (Tr. 203.) Dr. Tayob found that plaintiff's claimed need for a cane, wheelchair, and walker was not credible in that there was no supporting medical evidence. (Tr. 212.)

The ALJ's decision further notes, "[t]he medical records do not document that any treating physician has ever found or imposed any long term, significant and adverse mental or physical limitations upon the claimant's functional capacity since she filed her application for benefits on October 17, 2006." (Tr. 11.) Plaintiff's treating physicians noted no serious functional limitations that would warrant an assistive device for walking. (Tr. 224-41.) While plaintiff was treated at Grace Hill from April 2007 through August 2008, her records do not reflect any medical findings or diagnoses to support the need for an assistive walking

device. (Tr. 224-41.) Although April 13, 2007 notes indicate plaintiff had been using a cane, no treating physician indicated that she needed one. See Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005) (despite claimant's assertions, finding no medical records or opinions documenting claimant's use of a cane to be medically necessary). As discussed below, the ALJ found that plaintiff's failure to seek treatment, noncompliance with medication, and ability to function normally in daily living activities similarly suggest that her claimed impairments were not severe enough to warrant use of an assistive walking device. (Tr. 11, 41-43, 201-02, 206, 222, 228-30, 238-39.)

Plaintiff's RFC is also supported by the reports of Drs. Tayob and Cason, as well as her records from Grace Hill. (Tr. 201-07, 208-12, 224-41.) Dr. Tayob found that plaintiff was capable of light work with postural and environmental limitations, and a limited ability to reach using her right arm. (Tr. 208-12.) Dr. Cason found that plaintiff had good strength in her lower extremities, good grip strength, and was able to raise her left and right legs 90 degrees. (Tr. 203.) The only limitations noted by Dr. Cason were decreased ROM of plaintiff's lumbar spine and right shoulder. (Tr. 204.) Although plaintiff's Grace Hill record note that plaintiff used a cane, the records indicate no functional limitations. (Tr. 224-41.)

Plaintiff relies on the list of exhibits from a prior disability benefits file, admitted into evidence by the ALJ, which lists an exhibit labeled "Prescription for a Wheelchair/Walker, dated 4/15/02 from Dr. Behzad Baniadam." (Tr. 243.) The prescription itself is not in evidence in this case. While the list demonstrates that plaintiff may have been prescribed a wheelchair/walker prior to her alleged onset date here, the relevant time period in this case begins October 17, 2006, her date of application. See 20 C.F.R. §§ 416.330, 416.335.

Plaintiff alleges that the ALJ's failure to specifically discuss the exhibit list from a prior application was improper. This court disagrees. At the hearing, the ALJ acknowledged the exhibit list from the prior application, as well as plaintiff's allegation that even if there was no such current prescription, the exhibit list showed that there had been in the past. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) (although

required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted; ALJ's failure to cite specific evidence does not indicate that the evidence was not considered). Thus, the ALJ did not err in not discussing the exhibit list from plaintiff's prior application.

Plaintiff also argues the ALJ had a duty to obtain a copy of the prescription. An ALJ's duty to develop the record arises only if a crucial issue in the case is undeveloped. Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005). In this case, no crucial issue was undeveloped. The record contains ample medical evidence from the relevant time period regarding plaintiff's alleged disabilities. See Onstad v Shalala, 999 F.2d 1232, 1234 (8th Cir. 1993) (reversal due to failure to develop the record is warranted only where the failure is unfair or prejudicial).

The record shows that plaintiff's own statements are the only evidence supporting her asserted need for an assistive walking device from October 17, 2006 onward. However, plaintiff's statements are insufficient to establish the existence of a physical impairment. See 20 C.F.R. § 416.928(a). Pursuant to the regulations, it is plaintiff's responsibility to provide medical evidence to show that she is disabled. See 20 C.F.R. § 416.912; Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Here, plaintiff failed to do so. The court therefore concludes the ALJ properly determined plaintiff's RFC based on all of the relevant evidence of record.

The ALJ found that plaintiff's subjective complaints were not fully credible. To the extent plaintiff asserts the ALJ's credibility finding was in error, the court also disagrees. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001). In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir.1984).

"An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). The ALJ need not explicitly discuss each factor, however. Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005). "It is sufficient if he acknowledges and considers [the] factors before discounting a claimant's subjective complaints." Id.

Here, the ALJ properly considered inconsistencies between plaintiff's subjective allegations and the objective medical evidence. (Tr. 12-13.) The ALJ found that the objective medical evidence did not support all the impairments, symptoms, and limitations alleged. (Tr. 11-13.) Plaintiff's records from Grace Hill indicated no functional limitations. (Tr. 224-41.) An x-ray showed moderate degenerative and hypertrophic changes to plaintiff's lumbar spine, but no evidence of fracture, preserved intervertebral disc spaces, and satisfactory alignment. (Tr. 205.) The only functional limitations found by Dr. Cason were limited ROM in plaintiff's lumbar spine and right shoulder. (Tr. 204.) No record evidence supports Plaintiff's alleged need for an assistive device for walking. (Tr. 11.)

Although an ALJ may not reject a claimant's subjective complaints based solely on the objective medical evidence, such evidence is a useful indicator in making conclusions about the effect of symptoms, such as pain, on the claimant's ability to work. See 20 C.F.R. § 416.929(c). Moreover, the absence of an objective medical basis to support the degree of a claimant's subjective complaints is an important factor in evaluating the credibility of the claimant's testimony and complaints. See Ramirez v. Barnhart, 292 F.3d 576, 581 (8th Cir. 2002); Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991).

Plaintiff's activities of daily living were also inconsistent with the limitations she alleged. Plaintiff cooked, cleaned, washed some dishes, shopped for groceries, and did laundry. She drove without difficulty and used public transportation. She socialized and watched television. (Tr. 41-43.) See Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010)(acts that are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility).

"Moreover, 'acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain.'" Id. at 932. See also Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007)(claimant's credibility diminished where claimant prepared dinner, drove, visited her parents' house, attended bible study, and worked on the computer).

The ALJ found that plaintiff was "extremely motivated" to obtain benefits, noting that she had previously applied for benefits on several occasions. (Tr. 11, 134.) He also noted that her work history was sporadic at best, demonstrating only one year of substantial gainful activity since 1974. (Tr. 11, 131.) See Gaddis v. Chater, 76 F.3d 893, 895-96 (8th Cir. 1996)(claimant's testimony may be discounted where the record indicates that she was motivated by secondary gain).

The ALJ also discussed plaintiff's history of noncompliance, noting that she regularly failed to take prescribed medications and monitor her diabetes. (Tr. 11, 202, 228-30, 238-39.) She once reported to her doctor that she had not taken any medication in over six months, and another time reported that she had not taken any medication in over one month. (Tr. 229-30.) When she was compliant, plaintiff reported feeling better. (Tr. 240.) She also failed to seek regular medical treatment. (Tr. 11.) See Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005)(failure to follow a recommended course of treatment weighs against a claimant's credibility). If the ALJ finds that the claimant has not been compliant with prescribed medical treatment, the ALJ is justified in disregarding the claimant's subjective testimony regarding her disability. See Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001) (ALJ may consider noncompliance with medical treatment in decision to dispense with claimant's subjective complaints).

The ALJ in this case articulated the inconsistencies upon which he relied to discredit plaintiff's allegations regarding the extent of her limitations. (Tr. 7-12.) The ALJ's credibility finding is supported by substantial evidence in the record as a whole.

In response to a hypothetical question, the VE testified that an individual of plaintiff's age, education, work history, and RFC, would be capable of performing other work available in significant numbers in the

-13-

national economy. (Tr. 52-54.) Plaintiff cites the VE's testimony that such an individual, but who also needed a wheeled walker, would be unable to perform work existing in substantial numbers in the national economy. (Tr. 57.) However, the ALJ properly incorporated only those impairments and restrictions he found credible in determining plaintiff's RFC. (Tr. 7-12.) As discussed above, the ALJ properly determined that the record evidence did not support plaintiff's claimed need for an assistive walking device. (Tr. 11.) See Gragg v. Apfel, 615 F.3d 932, 940 (8th Cir. 2010)(hypothetical need only include those impairments and limitations found credible by the ALJ). The ALJ's hypothetical question incorporated only those impairments that the ALJ found credible, and excluded those that were discredited or that were not supported by the evidence presented. As the ALJ's hypothetical was properly formulated, the VE's testimony that plaintiff could perform other work constitutes substantial evidence supporting the Commissioner's decision. See Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996) (ALJ's hypothetical need include only those impairments that the ALJ finds are substantially supported by the record as a whole).

## VI. CONCLUSION

For the reasons set forth above, the court finds that the decision of the ALJ is supported by substantial evidence on the record and is consistent with the applicable law. The decision of the Commissioner of Social Security is affirmed. An appropriate judgment order is issued herewith.

             /S/  David D. Noce
            **UNITED STATES MAGISTRATE JUDGE**

Signed on September 26, 2011.